[S. F. No. 2460.   Department Two.—September 16, 1903.]

C. A. HOOPER, and T. M. OSMONT, Respondents, v. F. F. YOUNG, and AMELIA G. WEBBER, Appellants.

PATENTS—STATE SCHOOL LANDS—PRIOR PATENT FROM STATE—PRESUMPTION OF REGULARITY—BURDEN OF PROOF—SUBSEQUENT PATENT. —Upon the production of a prior patent from the state of certain school lands, regular upon its face, the presumption arises that it is valid, and passed the legal title, and it is of itself *prima facie* evidence that all steps prescribed by law for its proper issuance had been regularly taken, that the official plat was on file when the location was made, and that the officers did their official duty. The burden of proof is on parties claiming under a subsequent patent for the same lands to overcome these presumptions, and to prove that necessary preliminary proceedings to the issuance of the prior patent were not taken, and that it was issued without authority, or contrary to law. In the absence of such showing, the subsequent patent must be deemed void.

EJECTMENT—QUITCLAIM DEED FROM MORTGAGOR—DEED INTENDED AS
   MORTGAGE—POSSESSION OF MORTGAGEE AND GRANTEE—PRESUMPTION.
   —An action of ejectment cannot be maintained upon a quitclaim
   deed from a mortgagor who had conveyed the land by a deed intend-
   ed as a mortgage, where the mortgagee had possession under the
   deed, and had conferred all his rights upon the defendant in posses-
   sion. If there is no pretense that the mortgage debt has been paid
   either to the mortgagee or to the defendant as successor to his rights,
   the possession of the mortgagee, and of the defendant as his grantee,
   must be presumed rightful; and it must be presumed that the
   possession of the mortgagee was taken with the consent of the mort-
   gagor, after breach of the conditions of the mortgage.

APPEAL from a judgment of the Superior Court of the
City and County of San Francisco and from an order deny-
ing a new trial. J. M. Seawell, Judge.

The facts are stated in the opinion of the court.

Haskell & Denny, and Fox & Gray, for Appellants.

Freeman & Bates, and T. M. Osmont, for Respondents.

LORIGAN, J.—Ejectment to recover a tract of about forty
acres of land within the city and county of San Francisco.
Plaintiffs recovered judgment, and from said judgment, as
well as from an order denying their motion for a new trial,
defendants appeal.

The land in controversy is part of the five hundred thou-
sand acres granted to the state for school purposes, under the
act of Congress of 1841, for which the state of California
issued two patents, the first to P. L. Weaver, dated February
21, 1874; the second to Richard Wagner, dated January 24,
1881, both patents being recorded immediately after their re-
spective dates.

Plaintiffs deraign title through the Wagner patent and by
various mesne conveyances thereunder, which vested in them
whatever title Wagner acquired under his patent.

Independent of this regular deraignment of title under
said patent, plaintiffs introduced in evidence, for the purpose
of connecting themselves with the elder Weaver patent, a
quitclaim deed made to them by one J. W. Shanklin in 1894.
It was admitted that the defendants were at the time, and

prior to the commencement of this action, in possession of the property. With this showing plaintiffs rested their case.

The defendants claim solely under the Weaver patent, and to maintain their title thereunder introduced in evidence, besides that instrument, a certificate of purchase issued by the register of the state land office in favor of said Weaver, dated August 3, 1872, in the usual form, and containing the usual recitals of payment for the land, compliance with the law regarding its purchase, and of his right to a patent on surrender of the certificate. This was followed up by a deed of grant, bargain, and sale from said Weaver to James W. Shanklin, dated October 12, 1872, a similar deed from Shanklin to W. B. Swain for an express consideration of fifteen hundred dollars, dated January 14, 1873, together with a deed of gift from said Swain to defendant Amelia G. Webber, his daughter, dated December 22, 1892, all of which conveyances were of the lands in controversy.

In addition, defendants offered in evidence certified copies of records in the office of the surveyor-general of the state of California, showing, among other things, a certificate therein from the register of the United States land office that a notice of selection of the lands in controversy, together with other lands, had been made by the state of California in 1864, at which date the lands had been surveyed by authority of the United States; that at the date of the register's certificate (April 18, 1872,) there was no evidence in his office that any pre-emption, homestead, or other right had attached to the land, and that the official plat of survey of the township in which the lands were located had been on file in that office for "more than three months." Also, that an application for location under the state, dated December 20, 1871, and entitled "Location No. 93, amending No. 14," was filed by said Weaver for the land in dispute, which application showed that he had already surrendered to the state a school-land warrant for three hundred and twenty acres of land under an application of which this was amendatory; also, a certificate that said application was accepted by the surveyor-general, and a further certificate by said surveyor-general, dated August 3, 1872, that he had located three hundred and twenty acres of land (which included the lands in dispute), at the

request and for the use of said Weaver.  Upon this showing
defendants rested their case.  It will be observed that the
defendant Young does not seem to be in any wise connected
with the record title to the property, and is probably simply
a party in possession.

In rebuttal the plaintiffs then offered, and the court al-
lowed, in evidence, over defendants' objections, two instru-
ments executed by William B. Swain, grantee under the deed
from Shanklin.  They were both contracts made by Swain
with one W. Meeks, in which the former, in consideration of
certain payments to be made by Meeks, agreed to convey him
the premises in controversy.  In the first contract, dated
January 14, 1873, Swain agreed to convey the land ''accord-
ing to a certain conveyance made to me this day by James
W. Shanklin, which said conveyance was made to secure the
payment to me of the sum of $700 and interest from date.''
In the second, dated July 2, 1877, which appears to have been
a renewal of the first, Swain agreed, on payment of a given
amount, to convey the land ''according to certain conveyance
made to me on the fourteenth day of January, 1873, which
said conveyance was made to secure the payment to me of the
sum of . . . dollars, and interest added to date would make
the sum of $1,075.50, as above mentioned.''  The last instru-
ment alone seems to have been recorded, and this was done
March 2, 1894.

This constituted all the evidence—which was entirely docu-
mentary—introduced on the trial.

Appellants challenge, among others, the finding of the court
that plaintiffs were at the commencement of this action en-
titled to the possession of the property in dispute, and con-
tend, in addition, that the court erred in admitting in evidence
the instruments purported to have been executed by Swain;
and we think both points are well made.

On this appeal each party assails the validity of the patent
under which the other claims; in fact, the plaintiffs, although
claiming not only under the Wagner patent, but through the
Shanklin deed under the Weaver patent, even question the
validity of the latter.

We are unable to discover that the evidence discloses any
invalidity in the Weaver patent.  It is regular on its face,
and antedates the patent to Wagner almost seven years.

The rule is so well established as hardly to need mention that upon the production of a patent regular on its face the presumption arises that it is valid and passed the legal title, and is of itself further *prima facie* evidence that all the steps prescribed by law for its proper issuance had been regularly taken before the title was perfected through the patent. (*Heinlen* v. *Heilbron,* 97 Cal. 105; *Marshall* v. *Farmers' Bank of Fresno,* 115 Cal. 335.)

Plaintiffs contend, however, that this presumption is overcome by the records from the surveyor-general's office which the defendants offered in connection with their proofs of title, and claim that it appears therefrom that at the time the application of Weaver was filed, the lands had not become subject to sale by the state, because there was no approval or filing of the official plat. If this point was of any moment (*Roberts* v. *Columbet,* 63 Cal. 22), there is nothing to show that the official plat was not on file when Weaver's amendatory location was filed. The certificate of the register, dated April 18, 1872, (Weaver's amendatory application was filed as early as December 20, 1871,) states that the plat had been on file in his office "more than three months." How long before does not appear. Weaver's amendatory application had been on file less than four months when the certificate was made; and if it was legally essential that the plat should have been on file before the officers were warranted in making the location or issuing the patent, it is to be presumed that their official duty in this was regularly discharged (*Watkins* v. *Lynch,* 71 Cal. 24), and the issuance of the patent was additional evidence confirmatory of the presumption. (*Heinlen* v. *Heilbron,* 97 Cal. 105; *Marshall* v. *Farmers' Bank of Fresno,* 115 Cal. 335.) Aside from these considerations, however, it does not appear that the proceedings produced by defendants were all the proceedings in the land office pertaining to Weaver's application, and, from the filing of the amendatory location by him, it is apparent they were not. It is at least to be assumed from the contents of his amendatory location that some initiatory proceedings were taken by him prior thereto. How long before, or under what act of the legislature providing for the sale of these lands, is not apparent. His original application may have been made under

any of the various acts of the legislature from 1852 to 1868, and under the saving clause of the latter (Stats. 1867-1868, chap. 528) he would be entitled to a patent. But it did not devolve on defendants to show these things. Claiming under the elder patent, they were protected by the *prima facie* regularity of its issuance, with the attendant presumption of equal regularity in all preliminary proceedings in that regard, and why they made proof of them as far as they did is difficult to understand. Their case did not seem to require it. It was incumbent on the plaintiffs, who were assailing the patent, if they wished to overcome these presumptions, to show that some of the necessary preliminary proceedings to its issuance were not taken, and so make it appear that it was issued without authority or contrary to law. (*Collins* v. *Bartlett,* 44 Cal. 383; *Watkins* v. *Lynch,* 71 Cal. 24; *Levinston* v. *Ryan,* 75 Cal. 297.) No such showing was made, and in its absence the presumption of regularity is not disturbed, and hence, as the patent to Weaver was valid, it conveyed to him all the right of the state to this land, and it necessarily follows that the subsequent patent to Wagner by the state was void, and plaintiffs obtained no title to the premises under it.

But, as stated above, in addition to their claim of title under the Wagner patent, plaintiffs claim title under the Weaver patent, through the deed from Shanklin, which deed was made over twenty-one years after his prior deed to the defendant's grantor, Swain.

The theory of plaintiff, as far as this deed to them is concerned, is, that Shanklin's deed to Swain, while on its face an absolute conveyance of this land, was in fact a mortgage, and it was upon this theory that the court permitted the introduction of evidence of the agreements between Swain and Meeks as tending to show such fact. But this very position of the plaintiffs relative to their claim under Shanklin's deed, taken in connection with the pleadings, admission of possession, and presumptions from the evidence, precludes them from raising this question in an action of ejectment. As they acquired no title under the Wagner patent, their sole claim of right to possession of the premises is under the Shanklin deed, and their sole claim under it is as successors to Shanklin's interest as mortgagor under the alleged mortgage to

Swain. Whatever the true character of the conveyance made by Shanklin to Swain was, the defendant Webber, through her conveyance from the latter, succeeded to all his right and interest. If such conveyance was in fact a mortgage, she succeeded to Swain's rights as mortgagee. It is conceded in the case, that at and prior to the commencement of this action, the defendant Webber was in possession of the premises, and while it is true that the execution of a deed, absolute in form, but in fact a mortgage, does not warrant the grantee or mortgagee in taking possession of the mortgaged premises, still the mortgagee may agree or assent to such occupation. No presumption will be indulged in that one in possession of property is unlawfully or wrongfully there. On the contrary, the presumption is, that such possession is right and lawful. This presumption, in the absence of any showing to the contrary, must be indulged in here. Assuming the Shanklin deed to Swain to have been a mortgage, as contended for by plaintiffs (which, of course, we are not called on to determine, and do not), still, as the defendant Webber succeeded to Swain's rights as mortgagee, and is in possession, it must be presumed that she took such possession with the assent of the mortgagor, after breach of the conditions of the mortgage. When possession is so held by the mortgagee, the law is clearly settled that an action in ejectment cannot be maintained by the mortgagor to recover the possession until the debt is paid, and there is no pretense that this has been done in the case at bar. (*Frink* v. *LeRoy*, 49 Cal. 322; *Spect* v. *Spect*, 88 Cal. 444;[1] *Peshine* v. *Ord*, 119 Cal. 314.[2])

We do not discuss the sufficiency of the evidence introduced by plaintiffs to support their contention, that the Shanklin deed to Swain was a mortgage, because it is not pertinent to a disposition of the case, and in an action brought to redeem the question whether the deed to Swain was or was not a mortgage will be a vital question, upon which either additional or different evidence may be introduced.

We simply decide,—1. That plaintiffs acquired no title under the patent to Wagner, as it was void, because a valid patent had previously been issued to Weaver by the state; and 2. That as the admissions and presumptions in the case,

---

[1] 22 Am. St. Rep. 314.        [2] 63 Am. St. Rep. 131.

even on plaintiff's theory that the deed to Swain was a mortgage, show that the defendant Webber, as successor to all the rights of Swain, is in possession of the premises as mortgagee, the finding of the court that the plaintiffs were entitled to the possession of said premises is not sustained, but is contrary to the evidence.

The judgment and order appealed from are reversed and the cause remanded.

McFarland, J., and Henshaw, J., concurred.

Hearing in Bank denied.

Shaw, J., dissented from the order denying a hearing in Bank, and filed the following opinion on the 17th of October, 1903:—

SHAW, J.—I dissent from the denial of the petition for rehearing in this case. The decision of the court is based on the proposition that the defendant Webber, by virtue of a deed executed to her by her father, W. B. Swain, succeeded to all the rights of Swain as mortgagee of the land. There was no evidence of a transfer to Webber of the mortgage debt. The court says: ''Whatever the true character of the conveyance made by Shanklin to Swain was, the defendant Webber, through her conveyance from the latter, succeeded to all his right and interest. If such conveyance was in fact a mortgage, she succeeded to Swain's rights as mortgagee.'' And this would be a correct statement of the law if it were true that a conveyance of the mortgaged land by the mortgagee transferred to the grantee both the mortgagee's title or right to the land and his interest in the debt secured thereby. The authorities, however, are precisely to the contrary of this. A deed by the mortgagee of the mortgaged premises not accompanied by the transfer of the debt to the grantee is a nullity. (*Dutton* v. *Warschauer*, 21 Cal. 623.[1]) Also, it has been held that an attempt to assign a mortgage, without a transfer of the security, is without effect. (*Hyde* v. *Mangan*, 88 Cal. 320, 327; *Polhemus* v. *Trainer*, 30 Cal. 685.) And a conveyance of the mortgaged premises does not operate as an assign-

[1] 82 Am. Dec. 765.

ment of the mortgage, nor of the mortgage debt. (*Peters v. Jamestown Bridge Co.,* 5 Cal. 334.[1]) It follows from these authorities that the deed of gift executed by the mortgagee, Swain, to the defendant Webber was without any effect whatever, and did not transfer to the defendant Webber any right of possession which Swain may have held by virtue of his position as mortgagee. It is proper to state that the authorities above cited were not brought to the attention of this court until the filing of the petition for rehearing.

Beatty, C. J., being disqualified, did not participate.